**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (174156)
Kiley L. Grombacher, Esq. (245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:   (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
E-Mail: kgrombacher@bradleygrombacher.com

**AYLSTOCK, WITKIN, KREIS
  & OVERHOLTZ, PLLC**
Sin-Ting Mary Liu (282884)
R. Jason Richards (to be admitted *pro hac* vice)
17 E. Main St., Suite 200
Pensacola, Florida 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-Mail: mliu@awkolaw.com
E-Mail: jrichards@awkolaw.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| BERNADETTE BOGDANOVS, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>UNILEVER UNITED STATES INC.,<br><br><br>    Defendant. | Case No.: 5:22-cv-652<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **VIOLATIONS OF THE UNFAIR COMPETITION LAW;**<br>2. **VIOLATIONS OF THE FALSE ADVERTISING LAW**<br>3. **VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT**<br><br>**DEMAND FOR JURY TRIAL** |

1
**CLASS ACTION COMPLAINT**

### CLASS ACTION COMPLAINT

Plaintiff Bernadette Bogdanovs ("Plaintiff"), individually and on behalf of all others similarly situated throughout the State of California, files this Class Action Complaint ("CAC") against Defendant Unilever United Stated Incorporated ("Defendant"), and in support states the following:

### NATURE OF THE ACTION

1       This is a class action lawsuit by Plaintiff, and others similarly situated, who purchased Suave 24-hour Protection Powder aerosol antiperspirant and Suave 24-hour Protection Fresh aerosol antiperspirant products ("Suave Antiperspirants" or the "Products"). Defendant distribute, market and sell these Products over-the-counter under their brand name "Suave." Several of Defendant's Suave Antiperspirants have been independently tested and shown to be adulterated with benzene, a known human carcinogen. The presence of benzene in Defendant's Suave Antiperspirants was not disclosed in the products' label other otherwise made known to consumers, in violation of California state law. Plaintiff and the putative class suffered economic damages due to Defendant's misconduct (as set forth below) and they seek, among other things, injunctive relief and restitution for the full purchase price of the Suave Antiperspirants product(s) they purchased. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### JURISDICTION AND VENUE

2.       This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and is a class action in which there are more than 100 class members and many members of the class are citizens of a state different than Defendant.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Plaintiff suffered injury as a result of Defendant's acts in this district, many of the acts and transactions giving rise to this action occurred in this district, Defendant conduct substantial business in this district, Defendant have intentionally availed themselves of the laws and markets of this district, and Defendant are subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

4.     A substantial portion of the transactions and wrongdoings which gave rise to the claims in this action occurred in the County of Riverside, and as such, this action is properly assigned to the Eastern division of this Court.

## THE PARTIES

5.     Plaintiff Bernadette Bogdanovs resides in Palm Desert, California, and at all times relevant hereto has been a resident of the County of Riverside. In approximately January 2022, Plaintiff purchased Suave 24-hour Protection Powder aerosol antiperspirant from Big Lots, located at 69026 E Palm Canyon Dr, Cathedral City, CA 92234. During this time, Plaintiff was unaware that Defendant's Products were adulterated with benzene. Plaintiff purchased the Defendant's Products on the assumption that the labeling of these products was accurate and that the products were unadulterated, safe and effective. Plaintiff would not have purchased Defendant's Products had she known the Products contain benzene, a known human carcinogen. As a result, Plaintiff suffered injury in fact when she spent money to purchase Products she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

6.     Defendant Unilever United Stated Inc. is a subsidiary of the dual-listed company consisting of Unilever N.V. in Rotterdam, Netherlands and Unilever PLC in London, United Kingdom. Unilever United States, Inc. which includes the Suave brand, is located at 800 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. Defendant manufactured, marketed, designed, promoted and/or distributed the Products at issue.

## INTRODUCTION

7.    Defendant manufacture, marketed, advertised, labeled, distributed, and/or sold a variety of Suave Antiperspirants spray/aerosol products and lotions, including:

| 1 | Suave Antiperspirant | Aerosol | 24 Hour Protection, Powder |
|---|---|---|---|
| 2 | Suave Antiperspirant | Aerosol | 24 Hour Protection, Fresh (hereafter collectively referred to as "Products") [1] |

8.    In November 2021, Valisure LLC and ValisureRX LLC ("Valisure"), an analytical pharmacy, ran tests on a variety of Defendant's Products. Through its testing, Valisure discovered that certain of the Products contain benzene, with values ranging from 0.97 parts per million ("ppm") benzene to 5.21 ppm benzene in Suave 24 Hour Protection, Powder, Aerosol—the same Product purchased by Plaintiff. For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route.[2] Indeed, as recognized by the World Health Organization, "[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended."[3] Benzene is not listed as an active or inactive ingredient on any of the labels of Defendant's Products. Moreover, all of the Products are marketed and advertised in an identical manner — as "antiperspirants."

9.    On November 3, 2021, Valisure petitioned the FDA to address the dangerous levels of benzene in Defendant's Products and other antiperspirants/deodorants its testing revealed were contaminated with benzene. Following Valisure's petition, Defendant initiated

---

[1]  Discovery may reveal additional Products manufactured, sold, and distributed by Defendant that are affected by this action and Plaintiff reserves their right to include any such products in this action.

[2]  Centers for Disease Control and Prevention. *The National Institute for Occupational Safety and Health (NIOSH), Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).
[3]  https://www.who.int/ipcs/features/benzene.pdf.

an internal review of its products. Based on that review, on March 30, 2022, Defendant announced it was voluntarily recalling Suave 24-Hour Protection Aerosol Antiperspirant Powder and Suave 24-Hour Protection Aerosol Antiperspirant Fresh due to "unexpected" "elevated levels of benzene" in those Products.[4] In its recall announcement, however, Defendant does not disclose how many products it tested or what levels of benzene were detected in those products. The failure to disclose such information is concerning, since there is no "no safe level of benzene" exposure.[5] Thus, if Defendant's Products still contain benzene at levels that are dangerous to health and/or in violation of state law, without disclosing that information to consumers, consumers remain vulnerable to continued economic damages and harm unless the injunctive relief requested herein is granted.

10. Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[6] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[7]

---

[4] *See* https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/unilever-issues-voluntary-nationwide-recall-suave-24-hour-protection-aerosol-antiperspirant-powder.

[5] https://www.who.int/ipcs/features/benzene.pdf.

[6] https://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis in original).

[7] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017: Lyon, France), at p. 33.

As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence. … The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[8]

11. Likewise, the FDA recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[9] and classifies benzene as a "Class 1" solvent that should be "avoided."[10] FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[11]

12. The FDA regulates antiperspirants to ensure they meet safety and effectiveness standards.[12] The FDA regulates antiperspirants as over-the-counter ("OTC") drugs.[13] The FDA defines "Antiperspirant" as a "drug product applied topically

---

[8] *Id*. at 34.

[9] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q

[10] https://www.fda.gov/media/71737/download

[11] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download

[12] 21 C.F.R. § 350.10.

[13] https://www.fda.gov/cosmetics/resources-consumers-cosmetics/cosmetics-safety-qa-personalcare-products

that reduces the production of perspiration (sweat) at that site."[14] Per the FDA regulations governing Defendants' Products, titled "Antiperspirant Drug Products for Over-the-Counter Human Use,[15] there are certain acceptable active ingredients in products that are labeled as antiperspirant.[16] Benzene, a known human carcinogen, is not on the FDA's list of acceptable active ingredients for aerosol antiperspirant products. Nor has benzene been authorized by FDA to be used as a residual solvent in the manufacture of aerosol antiperspirant products. Despite this, Defendant's Products have been found by Valisure, an independent laboratory, to contain various amounts of benzene, including at excessive levels (i.e. >0.1 ppm). Whether characterized as an ingredient, inactive ingredient, or residual solvent, Defendant's failure to disclose to consumers, including Plaintiff and members of the putative class, that its Products contain benzene is misleading.

13.     FDA's Guidance for Industry Q3C provides that "Solvents in Class 1 [i.e. benzene] . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."13 That provision provides in full:

> III. SOLVENTS GROUPED BY CLASS Solvents in Class 1 [i.e. benzene] should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicity or their deleterious environmental effect. However, if their use is unavoidable in order to produce a drug product with a significant therapeutic advance, then their levels should be restricted … [to 2 ppm], unless otherwise justified.[17]

14.     Thus, although benzene should not be employed in the manufacture of drug substances, it may be used in manufacturing *some* drug substances when (1) its use is "unavoidable" to produce a drug product with (2) "significant therapeutic advance." As

---

[14] 21 C.F.R. § 350.3.
[15] 21 C.F.R. § 350.10.
[16] 21 C.F.R. § 350.10.
[17] Food and Drug Administration, Q3C – Tables and List Guidance for Industry (2017) (https://www.fda.gov/media/71737/download)

**CLASS ACTION COMPLAINT**

demonstrated by Valisure's findings, however, the use of benzene in aerosol antiperspirant products is not unavoidable and aerosol antiperspirant products do not represent a significant therapeutic advance. First, the use of benzene in making aerosol antiperspirant products is not "unavoidable" because some of the aerosol antiperspirant products tested by Valisure did not contain detectable levels of benzene while some did. *See* Ex. A. (Valisure Citizen Petition). Given that benzene was detected by Valisure in some of aerosol antiperspirant products but not in others is evidence in itself that benzene is not required in its manufacture. Second, aerosol antiperspirant products do not represent a "significant therapeutic advance." Indeed, the FDA has never considered the aerosol antiperspirant products as representing a "significant therapeutic advance." Moreover, considering the long history and widespread use of aerosol antiperspirant products, it does not appear that aerosol antiperspirant products constitute a significant therapeutic advance. *See* Ex. A (Valisure Citizen Petition).

15. Notably, benzene is not listed as an active or inactive ingredient (or otherwise identified as being present) on any of the labels of Defendant's Products. Neither is the use of benzene as a "residual solvent" in the manufacturing of aerosol antiperspirant products specifically authorized by FDA.[18] Similar to FDA's Guidance for Industry Q3C, the FDA's Residual Solvent Guidance on the use of "residual solvents" for drug products (USP General Chapter ) provides that because Class 1 cancer causing agents (like benzene) do not "provide therapeutic benefit," they should be "avoided" absent a showing that their use is "strongly justified" in a risk-benefit analysis. General Chapter 467 provides:

> Because residual solvents do not provide therapeutic benefit, they should be removed, to the extent possible, to meet ingredient and product specifications, good manufacturing practices, or other quality-based requirements. Drug products should contain no higher levels of residual solvents than can be supported by safety data. Solvents that are known to cause unacceptable toxicities (Class 1, Table 1) [e.g., benzene] should be avoided in the production of drug substances, excipients, or

---

[18] *See* Residual Solvent Guidance, "Residual Solvents in Drug Products Marketed in the United States" (2009) (applying standards in USP General Chapter Residual Solvents).

drug products unless their use can be strongly justified in a risk-benefit assessment.[19]

16.     Upon information and belief, Defendant has never conducted a "risk benefit assessment" regarding the use of benzene as a residual solvent in its Products, much less "strongly justified" its use before the FDA. Nor is the use of benzene as a residual solvent in manufacturing aerosol antiperspirant products "supported by the safety data" in light of the known health risks associated with exposure to benzene as detailed herein.

17.     The manufacture of any misbranded or adulterated drug is prohibited under California state law.[20]

18.     The introduction into commerce of any misbranded or adulterated drug is similarly prohibited.[21]

19.     The receipt in interstate commerce of any adulterated or misbranded drug is also unlawful.[22]

20.     Among the ways a drug may be adulterated are:

If it consists in whole or in part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been rendered injurious to health; . . . .[23]

---

[19] https://www.uspnf.com/sites/default/files/usp_pdf/EN/USPNF/generalChapter467Current.pdf (USP General Chapter Residual Solvents).

[20] *See* Cal. Health & Safety Code § 111250 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is adulterated."); Cal. Health & Safety Code § 111330 ("Any drug or device misbranded if its labeling is false or misleading in any particular.").

[21] Cal. Health & Safety Code § 111305 ("It is unlawful for any person to receive in commerce any drug or device that is adulterated or to deliver or proffer for delivery any drug or device.").

[22] Cal. Health & Safety Code § 111305.

[23] *See* Cal. Health & Safety Code § 111250 ("Any drug or device is adulterated if it consists, in whole or in part, of any filthy, putrid, or decomposed substance."); *see* Cal. Health & Safety Code § 111255 ("Any drug or device is adulterated if it has been

21.    A drug is misbranded:

(a) "If its labeling is false or misleading in any particular."[24]

(b) If the labeling does not contain, among other things, "the proportion of each active ingredient[.]"[25]

(d) "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[26]

22.    If a manufacturer labels a drug but omits ingredients (the contaminant), that renders the drug misbranded.[27]

23.    Because Defendant manufactured and sold Products with elevated levels of benzene, a known human carcinogen, the Products are considered adulterated and misbranded. As noted by the World Health Organization, there is no "no safe level of benzene" exposure, so it is unsuitable for human application as an ingredient in Suave

---

produced, prepared, packed, or held under conditions whereby it may have been contaminated with filth, or whereby it may have been rendered injurious to health.").

[24] California law states: "Any drug or device is misbranded if its labeling is false or misleading in any particular." Cal. Health & Safety Code § 111330. *See also* Cal. Health & Safety Code § 111285 ("Any drug or device is adulterated if its . . . purity of quality is below, that which it is represented to possess.").

[25] *See* Cal. Health & Safety Code § 111355(a): "Any drug is misbranded unless its label bears . . . all of the following information:... (3) For nonprescription drugs, the quantity or proportion of each active ingredient and the established name of each inactive ingredient in accordance with Sections 502(e)(1)(A)(ii) and (iii) of the federal act (21 U.S.C. 352(e)(1)(A)(ii) and (iii))."

[26] *See* Cal. Health & Safety Code § 111400 ("Any drug or device is misbranded if it is dangerous to health when used in the dosage, or with the frequency or duration prescribed, recommended, or suggested in its labeling.").

[27] "The labeling of a drug may be misleading by reason (among other reasons) of: ... (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in the light of the representation that such ingredient is present in such drug." 21 C.F.R. §201.10(2). *See* Cal. Health & Safety Code § 111355(b) ("Any drug is misbranded unless its label bears . . . all of the following information: The requirement for stating the quantity of the active ingredients of any drug . . . .").

Antiperspirants.[28] And, as noted below, because the use of benzene in antiperspirants is not "unavoidable" and because antiperspirants do not provide a "significant therapeutic advance," the use of benzene should not be employed in the manufacture of drug substances such as OTC antiperspirants.

24.     Defendant wrongfully advertised and sold the Products without any labeling to indicate to consumers that these products contain benzene. The following image shows an example:



---

[28] https://www.who.int/ipcs/features/benzene.pdf.

**CLASS ACTION COMPLAINT**

25.     Furthermore, Defendant makes a significant number of representations regarding the safety of the Products on their website. Unilever assures consumers that, "[t]o keep people safe, we conduct two types of consumer safety risk assessment: ingredient safety and microbiological safety. Ingredient safety assessments evaluate the potential effects an ingredient in our products could have on the body."[29] Although the Products were found to contain benzene concentration that far exceed the FDA limit, Defendant does not list benzene among the active or inactive ingredients anywhere on its website,[30] and nothing on the Products' labels otherwise insinuate, state, or warn that the Products contain benzene.

26.     Plaintiff has standing to represent members of the putative class because there is sufficient similarity between the specific product purchased by the Plaintiff (i.e. Suave 24-hour Protection Aerosol Antiperspirant Powder) and the other Product not purchased by Plaintiff (i.e. Suave 24-Hour Protection Aerosol Antiperspirant Fresh). Specifically, both of the Products (i) are marketed in substantially the same way – as "antiperspirant"— and (ii) fail to include labeling indicating to consumers that the Products contain benzene. Accordingly, the misleading effect of both Product labels are substantially the same.

## CLASS ALLEGATIONS

27.     Plaintiff brings this action on behalf of herself and all others similarly situated class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class against Defendant for violations of California state laws (the "Class"):

---

[29] https://www.unilever.com/planet-and-society/safety-and-environment/keeping-people-and-theenvironment-safe/ (last visited Nov. 10, 2021).
[30] https://smartlabel.unileverusa.com/079400784902-0001-en-US/index.html (Suave 24-Hour Protection Powder Aerosol) (last visited March 2, 2022);
https://smartlabel.unileverusa.com/079400785503-0001-en-US/index.html (Suave 24-Hour Protection Fresh Aerosol) last visited March 2, 2022).

**CLASS ACTION COMPLAINT**

All consumers who purchased Suave 24-hour Protection Aerosol Antiperspirant Powder or Suave 24-Hour Protection Aerosol Antiperspirant Fresh in the State of California from April 15, 2018 to the present for personal use or consumption. Excluded from the Class are individuals who allege personal bodily injury resulting from the use of the Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

28.     The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of the Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

29.     Plaintiff's claims are typical to those of all class members because members of the class are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied the Product labels. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

30.     Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiff and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

(a)   whether Defendant's Products contained benzene;

(b)   whether Defendant's omissions are true, or are misleading, or objectively reasonably likely to deceive;

(c)   whether the alleged conduct constitutes violations of the laws asserted;

(d)   whether Defendant's alleged conduct violates public policy;

**CLASS ACTION COMPLAINT**

(e) whether Defendant engaged in false or misleading advertising;

(f) whether Plaintiff and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

(g) whether an injunction is necessary to prevent Defendant from continuing to market and sell defective and adulterated Products that contain benzene, a known human carcinogen.

31. Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has not adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

32. A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

33. The Class also may be certified because Defendant have acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

34. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin

and prevent Defendant from engaging in the acts described above, and requiring Defendant to provide full restitution in the form of a refund of the full purchase price of the Products to Plaintiff and Class members.

35.     Unless a Class is certified, Defendant will retain monies received as a result of their conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## FIRST CAUSE OF ACTION

**(Violations of the Unfair Competition Law (the "UCL")**
**Cal. Bus. & Prof. Code § 17200, *Et Seq.***
**(Against Defendant on Behalf of the Class)**

36.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

37.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising...." Cal. Bus. & Prof. Code § 17200.

*Fraudulent Acts and Practices*

38.     Any business act or practice that is likely to deceive members of the public constitutes a fraudulent business act or practice under the UCL. Similarly, any advertising that is deceptive, untrue or misleading constitutes a fraudulent business act or practice under the UCL.

39.     Defendant have engaged, and continue to engage, in conduct that is likely to deceive members of the public. This conduct includes representing in their labels that their Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the Products are adulterated with benzene, a known human carcinogen.

40.     Similarly, Defendant have engaged, and continue to engage, in deceptive, untrue, and misleading advertising by making representations regarding the safety of the Products, including assuring consumers that: (1) "[t]o keep people safe, we conduct two types of consumer safety risk assessment: ingredient safety and microbiological safety.

Ingredient safety assessments evaluate the potential effects an ingredient in our products could have on the body";[31] (2) Before making our products available to consumers, we make health and safety our top priority";[32] (3) "All Suave formulas are safe to use and meet the highest global standards in safety and quality";[33] (4) "We rigorously assess all Suave products to ensure all ingredients, manufacturing and labeling comply with applicable laws and regulations all over the world";[34] (5) "we focus on one thing. Creating quality products . . . .";[35] (6) "testing [is] done to ensure that consumers will get a quality product that is safe and stable for use under different temperature and humidity conditions";[36] (7) "safety assessments . . . [are conducted to] make sure that we only use what is needed to provide safe and effective products";[37] (8) "regulatory assessment [is conducted to] ensure[] that our products, their ingredients, how they are manufactured and labeled comply with all federal and state laws";[38] and (9) "[with Suave,] you can trust we've got the good stuff."[39] Defendant made all of these assurances regarding the safety and quality of their Products without disclosing to consumers that its Products contain elevated levels of a cancer-causing chemical (benzene). This is misleading to consumers. Moreover, Plaintiff and the putative Class members were exposed to one or more of these representations during the class period and relied on one or more of these representations in deciding to purchase Defendant's Products. Additionally, although the Products were found to contain benzene, Defendant does not list benzene among the active or inactive ingredients anywhere on its website,[40] and

---

[31] https://www.unilever.com/planet-and-society/safety-and-environment/keeping-people-and-theenvironment-safe/ (last visited Nov. 10, 2021).
[32] https://www.suave.com/us/en/dmdm-hydantoin-products-information.html.
[33] https://www.suave.com/us/en/dmdm-hydantoin-products-information.html.
[34] https://www.suave.com/us/en/dmdm-hydantoin-products-information.html
[35] https://www.suave.com/us/en/about.html
[36] https://www.suave.com/us/en/dmdm-hydantoin-products-information.html.
[37] https://www.suave.com/us/en/dmdm-hydantoin-products-information.html.
[38] https://www.suave.com/us/en/dmdm-hydantoin-products-information.html
[39] https://www.suave.com/us/en/about.html
[40] https://smartlabel.unileverusa.com/079400784902-0001-en-US/index.html (Suave 24-Hour Protection Powder Aerosol) (last visited March 2, 2022);

**CLASS ACTION COMPLAINT**

nothing on the Products' labels otherwise insinuate, state, or warn that the Products contain benzene. Again, such misrepresentations mislead consumers regarding the safety and quality of the Products.

41.   With respect to benzene in particular, Defendant recently added a section to its website titled "Controlling for Benzene."[41] That information states "[w]e have strict quality controls in place that limit the presence of benzene in our deodorant, skincare and haircare products and *require that any traces found fall within defined safety levels*. All of our products are rigorously assessed by our safety scientists and meet the highest global standards in quality and safety as well as applicable laws and regulations, so that *you can have complete trust in Suave*." *Id.* (emphasis added). Notwithstanding this representation, Valisure's testing revealed that Suave Antiperspirants contained benzene levels that vastly exceeded any supposed safety levels (e.g. 5.21 ppm in Suave 24 Hour Protection, Powder, Aerosol—the same Product purchased by Plaintiff). Defendant's subsequent "internal review" of the Products confirmed Valisure's findings insofar as its review revealed "unexpected" "elevated levels of benzene" in its Products, necessitating a voluntary recall.[42] Thus, Defendant continues to misrepresent to consumers. Contrary to its claims, Defendant does not have "strict quality controls in place that . . . require that any traces found fall within defined safety levels*."* If that were true, Valisure would not have detected benzene in Suave Antiperspirants that far exceeded any supposed FDA limit, and Defendant would not have confirmed Valisure's findings by detecting "elevated levels of benzene" warranting a Product recall. Accordingly, injunctive relief is necessary to ensure that Defendant does not continue to mislead consumers as to the safety and quality of its Products.

---

https://smartlabel.unileverusa.com/079400785503-0001-en-US/index.html (Suave 24-Hour Protection Fresh Aerosol) last visited March 2, 2022).
[41] https://www.suave.com/us/en/dmdm-hydantoin-products-information.html.
[42] *See* https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/unilever-issues-voluntary-nationwide-recall-suave-24-hour-protection-aerosol-antiperspirant-powder.

42.     By committing the acts alleged above, Defendant have engaged in fraudulent business acts and practices, which constitute unfair competition within the meaning of Business & Professions Code §17200.

***Unlawful Acts and Practices***

43.     The violation of any law constitutes an unlawful business practice under Business & Professions Code §17200.[43]

44.     Defendant's conduct also violates Cal. Health & Safety Code § 111730, which prohibits the sale of any misbranded product. By selling Products that do not disclose the presence of benzene in its labeling or otherwise, the labeling is "false and misleading in any particular" in violation of Health & Safety Code § 111730.

45.     By violating the FTC Act and/or Cal. Health and Safety Code § 111730, Defendant have engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Cal. Bus. & Prof. Code § 17200.

***Unfair Acts and Practices***

46.      Any business practice that offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers constitutes an "unfair" practice under the UCL.

47.     Defendant has engaged, and continues to engage, in unfair business practices. This conduct includes representing that the Products are safe even though the Products contain admittedly "elevated" levels of benzene, a cancer-causing chemical.[44]

48.     Defendant has engaged, and continues to engage, in conduct that violates the legislatively declared policies of the FTC Act against committing unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. Defendant

---

[43] Defendant's conduct also violates Section 5 of the Federal Trade Commission "("FTC) Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce.

[44] https://www.unileverusa.com/.

gained an unfair advantage over its competitors, whose advertising for products must comply with the FTC Act.

49.     Defendant's conduct, including misrepresenting the safety and efficacy of the Products, is substantially injurious to consumers. Plaintiff and the Class would not have paid for Suave Antiperspirants adulterated with benzene but for Defendant's false labeling, advertising, and promotion. Thus, Plaintiff and the putative Class have "lost money or property" as required for UCL standing, and such an injury is not outweighed by any countervailing benefits to consumers or competition.

50.     Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's representation of the ingredients contained in the Products' labels and injury resulted from ordinary use of the Products, consumers could not have reasonably avoided such injury.

51.     By committing the acts described above, Defendant have engaged in unfair business acts and practices which constitute unfair competition within the meaning of the UCL.

52.     As a result of the conduct described above, Defendant have been unjustly enriched at the expense of the Plaintiff and the putative Class.

53.     An action for injunctive relief and restitution is specifically authorized under Cal. Bus. & Prof. Code 17203.

54.     Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter. Defendant's conduct with respect to the labeling, advertising, marketing, and sale of the Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

55.     In accordance with <u>California Business & Professions Code section 17203</u>,[45]

---

[45] "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction." Cal. Bus. & Prof. Code § 17203.

Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

56.     On behalf of Plaintiff and the putative Class, Plaintiff also seeks an order for the restitution of all monies spent on the Products, which were acquired through acts of fraudulent, unfair, or unlawful competition.[46] In addition, because the Products admittedly contain elevated levels of benzene, the measure of restitution should be rescission and full refund insofar as the Suave Antiperspirants are worthless. But for Defendant's misrepresentations and omissions, Plaintiff would have paid nothing for Products that contain elevated levels of a known human carcinogen. Indeed, there is no discernible "market" for an OTC antiperspirant that is adulterated with elevated a known human carcinogen. As recognized by the World Health Organization, "[b]enzene is carcinogenic to humans, and no safe level of benzene can be recommended."[47] As a result, the Products are rendered valueless.

## SECOND CAUSE OF ACTION

### (Violations of California's False Advertising Law)
### California Business & Professions Code §§17500, Et. Seq.
### (Against Defendant on Behalf of the Class)

57.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

58.     California's False Advertising Law prohibits any statement in connection

---

[46] "Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered injury in fact and lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204.

"The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." Cal. Bus. & Prof. Code § 17203.

[47] https://www.who.int/ipcs/features/benzene.pdf.

with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code §17500.

59.     As set forth herein, Defendant's marketing claims that its Products are "safe to use and meet the highest global standards in safety and quality"[48] are untrue and misleading. To the contrary, antiperspirants that contain elevated levels of benzene present a real health risk to consumers.

60.     Defendant knew, or reasonably should have known, that its claims regarding the safety and quality of its Products were untrue or misleading.

61.     Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase Defendant's Products in the future if she can be assured that the Products are unadulterated and meet the advertising claims. Absent injunctive relief, Defendant may continue to advertise, promote and sell adulterated Products that deceive the public as to their quality and safety. In fact, they are continuing do so to this day on their website with respect to benzene in particular.[49] Plaintiff is thus likely to again be wronged in a similar way. For instance, if Plaintiff encounters Defendant's Suave Antiperspirants in the future and those products still contain benzene, Plaintiff may mistakenly rely on the Defendant's marketing and/or label to believe that Defendant eliminated or reduced the level of benzene in its products to a safe level when it did not.

62. Plaintiff and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Products.

## **THIRD CAUSE OF ACTION**

**(Violations of the Consumers Legal Remedies Act (the "CLRA")**
**Cal. Bus. & Prof. Code § 1750, *Et Seq.***
**(Against Defendant on Behalf of the Class)**

63.     Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

---

[48] https://www.suave.com/us/en/dmdm-hydantoin-products-information.html.

[49] https://www.suave.com/us/en/dmdm-hydantoin-products-information.html.

64.    Defendant have employed or committed methods, acts, or practices declared unlawful by Cal. Civ. Code §1770 in connection with the Products.

65.    In particular, by failing to inform consumers that the Products contain benzene, Defendant has violated the following provisions under California Civil Code § 1770(a):

> (5) by representing that the Products have characteristics, uses and/or benefits which they do not;
>
> (7) by representing that the Products were of a particular standard, quality, or grade which they are not;
>
> (9) by advertising the Products with intent not to sell them as advertised; and
>
> (16) by representing that the Products have been supplied in accordance with previous representations when they have not.

66.    Pursuant to § 1780(a) of the CLRA, Plaintiffs seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices of Defendant including, but not limited to, an order enjoining Defendant from distributing such false advertising and misrepresentations.  Plaintiff, the members of the California Class, and the public at large shall be irreparably harmed if such an order is not granted.

67.    Plaintiff and the putative Class are not presently seeking monetary damages under the CLRA. Plaintiff reserves the right to request amendment of this complaint to include a request for damages under the CLRA after complying with Civil Code 1782(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiff and their counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.    An order enjoining Defendant from selling the Products;

C.     An order enjoining Defendant from suggesting or implying that they are safe and effective for human application;

D.     An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief;

E.     An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.     An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.     An order awarding attorneys' fees and costs to Plaintiff and the Class; and

J.     An order providing for all other such equitable relief as may be just and proper.

DATED: April 15, 2022

By: /s/ Kiley L. Grombacher

**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (174156)
Kiley L. Grombacher, Esq. (245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:   (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
Email: kgrombacher@bradleygrombacher.com

SIN-TING MARY LIU
**AYLSTOCK, WITKIN, KREIS &**
**OVERHOLTZ, PLLC**
Sin-Ting Mary Liu (282884)
R. Jason Richards (FL Bar #18207)
(to be admitted *pro hac vice*)
17 E. Main St., Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: mliu@awkolaw.com
E-mail: jrichards@awkolaw.com

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

DATED: April 15, 2022

By: /s/ Kiley L. Grombacher

**BRADLEY/GROMBACHER, LLP**
Marcus J. Bradley, Esq. (174156)
Kiley L. Grombacher, Esq. (245960)
31365 Oak Crest Drive, Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile:   (805) 270-7589
E-Mail: mbradley@bradleygrombacher.com
Email: kgrombacher@bradleygrombacher.com

SIN-TING MARY LIU
**AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC**
Sin-Ting Mary Liu (282884)
R. Jason Richards (FL Bar #18207)
(to be admitted *pro hac vice*)
17 E. Main St., Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449
E-mail: mliu@awkolaw.com
E-mail: jrichards@awkolaw.com

**CLASS ACTION COMPLAINT**